UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
**FILED**
APR 2 0 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-245-GWU

VICKY WHITE,                                                      PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,               DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

White

        Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

        Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "more than a mere scintilla[; i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . ." Wright v. Massanari, 321 F.3d 611, 614 (6th Cir. 2003) (quoting Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981). It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these

symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be

4

White

considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and

White

analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Vicky White, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment consisting of being "status post motor vehicle accident with protracted soft tissue syndrome." (Tr. 20-1). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mrs. White retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 26-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to medium level exertion, and could only occasionally climb, stoop, bend, crouch, or crawl, and needed to "avoid hazards." (Tr. 404). The VE

7

White

responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).[1]

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence.

Mrs. White alleged disability due to physical limitations which had started after a motor vehicle accident. (Tr. 71). She described pain throughout her body, migraines, fatigue, weakness, dizziness, and numbness in the extremities. (Tr. 393-401).

The plaintiff's treating family physician, Dr. John M. Watts, submitted office notes showing that after the accident he sent Mrs. White for physical therapy and chiropractic treatment. (Tr. 169, 172). Objective studies such as x-rays were normal (Tr. 146), but Dr. Watts noted tenderness in the locale of trigger points on several occasions. (E.g. Tr. 166). He kept his patient "off work" and referred her to Dr. Rahul Dixit, who also found positive trigger points in the cervical spine and trapezius. (Tr. 186). Dr. Dixit performed steroidal injections, but the plaintiff continued to complain of pain, poor sleep, and lack of energy. (Tr. 195). Dr. Dixit noted ten of

---

[1] The Court notes that the ALJ's actual functional capacity finding differed from the hypothetical question in several important respects, most notably in that it included a restriction to only occasional reaching above shoulder level. (Tr. 24). "Hazards" were defined more precisely as "unprotected heights, moving machinery, and driving automotive equipment." (Id.). Although the case is being decided on other grounds, these inconsistencies would also have provided a basis for remand.

twelve tender points for "fibrositis" were positive. (Id.). He diagnosed fibromyalgia, and suggested follow-up with a psychiatrist, Dr. Carpio. (Id.).

In March, 2002, Dr. Dixit referred Mrs. White to Dr. Paul Goldfarb, a rheumatologist. (Tr. 198). Dr. Goldfarb noted that Dr. Dixit had obtained laboratory testing which showed an elevated Sedimentation Rate. (Tr. 188, 198). Dr. Goldfarb's physical examination showed that the plaintiff had a largely normal range of motion with complaints of pain, and both hands were slightly puffy. (Tr. 199). She had 15 out of 18 possible trigger points. (Id.). His impression was fibromyalgia and a question of early inflammatory arthritis due to the elevated Sedimentation Rate. (Tr. 200).

Following the visit to Dr. Goldfarb, Dr. Watts completed a physical residual functional capacity form dated July 30, 2002 limiting the plaintiff to lifting no more than three to five pounds for "[one-third] of a day or less - intermittently," standing and walking a total of 20 to 40 minutes "intermittently" in an eight-hour day, sitting one to three hours in an eight-hour day (no more than 30 to 60 minutes without interruption), occasionally climbing, balancing, crouching, kneeling, and crawling, and having limitations on reaching, handling, pushing, and pulling. (Tr. 206-9). As justification for the limitations, Dr. Watts stated that the plaintiff suffered from a severe form of fibromyalgia and, although she had good and bad days, her myalgias and weakness would prevent constant job activity. (Tr. 209). These restrictions

9

were restated in another form dated November 18, 2002. (Tr. 220-3). The only difference between the two forms was that sitting was now limited to a total of one to two hours, and standing and walking was given as "less than six hours in a day" but still not more than 20-40 minutes without interruption. (Tr. 221).

Dr. Barry Schumer conducted a consultative examination of the plaintiff on July 31, 2002. Evidently the only records that he reviewed were a few pages of emergency room notes from the date of the plaintiff's motor vehicle accident on July 17, 2000. (Tr. 218). Nor did he obtain any laboratory testing. (Tr. 213). His physical examination showed a generally full range of motion but with complaints of pain with most movements, a "subjectively and symmetrically" diminished grip, although he questioned effort, and tenderness over multiple soft tissue and joint locations. (Tr. 212). There was no atrophy. Dr. Schumer's assessment was that the plaintiff had what he referred to as "protracted soft tissue syndrome" of unexplained etiology following her motor vehicle accident. (Tr. 213). He felt that the diagnosis of fibromyalgia was "somewhat implausible given the relative abrupt onset of most her symptoms with trauma." (Id.). However, he felt that she was "clearly impaired at the present time as regards doing her normal activities" and would have to be considered fairly limited in terms of her ability to any activity that required "significant" functional capacity "based on her history." (Id.).

10

Dr. Schumer prepared two assessments of the plaintiff's functional capacities, both dated July 31, 2002. In a "Medical Assessment of Ability to Do Work-related Activities (Physical)," he opined that the plaintiff could lift ten pounds occasionally and five pounds frequently, would have no impairment in her ability to stand, walk, or sit, and that she could occasionally climb, balance, stoop, crouch, kneel, and crawl. (Tr. 214-16). This assessment would clearly limit the plaintiff to no more than sedentary level exertion. However, in a "Functional Capacities Form," he checked boxes indicating that the plaintiff could occasionally lift 51 to 100 pounds, could frequently lift ten pounds, could sit, stand, and walk four hours a day each with rests, could occasionally bend, squat, crawl, climb, and reach above shoulder level, and would have a "mild" restriction on working around unprotected heights, moving machinery, and driving automobile equipment. (Tr. 217).

Apparently no attempt was made to question Dr. Schumer about the inconsistencies in these assessments. The ALJ stated in her decision that she would give no weight to Dr. Schumer's "Medical Assessment" form, but would place great weight on the "Functional Capacities Form" because she felt that it was more consistent with the physician's findings and with the record as a whole. (Tr. 23-4). She also rejected Dr. Watts's assessments because she felt they were not consistent with his examinations, the record as a whole, and objective testing. (Tr. 23).

11

White

As the Sixth Circuit noted in <u>Preston v. Secretary of Health and Human Services</u>, 854 F.2d 815 (6th Cir. 1988), fibromyalgia or "fibrositis" can only be diagnosed by "elimination of other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." <u>Id.</u> at 819. The Court noted that the CT scans, x-rays, and minor physical abnormalities cited by the Secretary as substantial evidence of no disability "are not highly relevant in diagnosing fibrositis or its severity . . . fibrositis patients manifest normal muscle strength and neurological reactions and have a full range of motion[; t]hus, the standard clinical tests and observations . . . to detect neurological and orthopedic disease are of little aid or relevance in the diagnosis of Preston's disabling fibrositis, except as a means of excluding certain neurological or orthopedic causes of her pain." <u>Id.</u> at 820. Therefore, it is clear that the limited findings on physical examination and objective testing such as x-rays are of limited probative value in discounting credibility of a diagnosis of fibromyalgia. The Sixth Circuit further noted that the credibility of Preston's treating physician's opinion was boosted because he had given Preston extensive referrals to a neurologist, orthopedist, rheumatologist, and psychologist, as well as referrals to physical therapy and a pain clinic, in order to systematically eliminate other diagnoses. <u>Id.</u> In the present case, Dr. Watts and Dr. Dixit also made extensive referrals, and the diagnosis of fibromyalgia was made not just by Dr. Watts but by the rheumatologist, Dr. Goldfarb. All the sources either

12

White

ordered extensive testing or had access to extensive testing. Dr. Schumer, in contrast, was very poorly placed to overcome the opinion of a treating source. He was a one-time examiner who did not review any of the significant medical history and did not obtain objective tests of any kind. Even without considering the additional factor of his hopelessly contradictory functional capacity conclusions, Dr. Schumer's opinion could not serve as substantial evidence to support the rejection of a treating physician opinion.

This leaves the question of whether the plaintiff is entitled to an immediate award of benefits. After obtaining the VE's testimony about a set of restrictions based on Dr. Schumer's findings, the ALJ had asked the VE to consider Dr. Watts' second functional capacity assessment at Exhibit 17F. (Tr. 406). The VE testified that if the hypothetical individual were limited to lifting three to five pounds for one-third of a day, the jobs he had identified in response to the previous hypothetical would not be available. (Tr. 406). He felt that the form was somewhat unclear, however, in that the physician had given the restriction as to the frequency of lifting on the wrong line of the form. (Id.). The ALJ then asked him to assume that the person could lift three to five pounds *throughout* an eight hour day, as well as a sit/stand option. (Id.). The VE stated that, with this assumption and the other factors in Exhibit 17F, there would be some sedentary level jobs the person could perform. (Tr. 407).

13

White

It does appear from both of the Watts forms that he was restricting the plaintiff to lifting no more than one-third of a day, but in view of the slight ambiguity noted by the VE, the interests of justice dictate that the case be remanded for further consideration.

This the  20  day of April, 2005.

G. WIX UNTHANK
SENIOR JUDGE